UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| **ZULMAI NAZARZAI,**<br><br>Plaintiff,<br><br>v.<br><br>**COUNTY OF ORANGE, et al,**<br><br>Defendants. | Case No.<br>SACV 17-1884 AG (AGRx)<br><br>**MEMOMORANDUM OF DECISION WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Whenever the Government reaches its strong arm down to put someone in jail, important issues are always raised. Especially when it's done without a jury for a failure to pay money. For nearly six years. In a case where a public defender would have been helpful from the start, but was not originally provided.

Plaintiff Zulmai Nazarzai seeks damages for his nearly six-year civil contempt imprisonment ordered by a state court judge for the failure to pay $360,540. He also seeks damages for religious discrimination.

After a five day bench trial, the Court considered providing its Findings of Fact and Conclusions Law orally and immediately. Instead, the Court concluded that the matter needed additional briefing, followed by this written Memorandum of Decision. The Court now provides its Findings of Fact, which show the difficulties that have been imposed on Mr. Nazarzai. The Conclusions of Law that follow, however, ultimately establish that a defense judgment is required in this case.

In July 2009, a civil complaint was filed by the State of California against Mr. Nazarzai and others for unfair business practices. (Dkt. No. 100 at 2; Dkt. No. 108 at 14.) The state court issued a preliminary injunction that was served on Mr. Nazarzai. (Dkt. No. 100 at 2.) Under the terms of the preliminary injunction, Mr. Nazarzai disclosed cash assets totaling $370,540. (*Id.*) On July 1, 2010, the court ordered Mr. Nazarzai to turn over $360,540 within a day. (*Id.*) Mr. Nazarzai didn't turn over the money, and on July 19, 2010, the court issued an order to show cause regarding contempt. (*Id.*)

After several proceedings and a contempt trial, in December 2010, the court ordered Mr. Nazarzai jailed until he paid $360,540 or until the conclusion of the underlying proceedings. (*Id.*) Mr. Nazarzai testified that the cash disappeared while under the control of his ex-fiancé, Sharon Fasela (*See* Dkt. No. 107 at 31.) For many years, Mr. Nazarzai sought his release from

jail through the state and federal court system. (Dkt. No. 100 at 2-3.) By December 2012, the trial court issued a second turnover order for the same amount of money. (*Id.* at 4.)

In March 2014, Mr. Nazarzai attempted suicide. (*See* Dkt. No. 99 at 14.) In December 2014, the trial court appointed a public defender for Mr. Nazarzai. (*Id.* at 18.)

To support this, Mr. Nazarzai stated under penalty of perjury that he: had no assets in excess of $500; owned no real property; owned no personal property in excess of $500; owed no interest in any motor vehicle, boat, or aircraft; owned no bank accounts in any financial institution; owned no stocks or bonds; owned no security interests; owned no promissory notes or other negotiable instruments; held no judgments against others; owned no businesses; wasn't a beneficiary or any estate or trust; owned no interest in any insurance policy; owned no annuities; and had no other appreciable assets. (*See* Dkt. No. 108 at 11.) Based on that evidence, the trial court provided a public defender. (*Id.*)

Mr. Nazarzai continued to seek his release in state and federal courts. (Dkt. No. 100 at 8.) He repeatedly argued that his incarceration violated California Penal Code Section 19.2. (Dkt. No. 100 at 3-8.) In 2015, the California Court of Appeal found that Plaintiff wasn't committed within the meaning of Section 19.2 to a length of time in jail for civil contempt, but instead was incarcerated for an indefinite period until he followed the trial court's orders within the meaning of California Code of Civil Procedure Section 1219(a). (*See* Dkt. No. 91 at 16-17.) Section 1219(a) states, "When the contempt consists of the omission to perform an act which is yet in the power of the person to perform, he or she may be imprisoned until he or she has performed it, and in that case the act shall be specified in the warrant of the commitment." (*Id.*)

During his time in jail, Mr. Nazarzai also made multiple complaints regarding religious discrimination against his Islamic faith. (Dkt. No. 99 at 4-9.) Further, Mr. Nazarzai testified at

trial that his young daughter may have outgrown his lap in the years he was imprisoned, but his love for his daughter and the pain he felt being away from her never left him. (Dkt. 108 at 13.)

In September 2016, the California Court of Appeal ordered the trial court to set aside and vacate a February 2016 order denying Mr. Nazarzai's petition for writ of habeas corpus and request for an evidentiary hearing. (Dkt. No. 100 at 8.) The Court of Appeal ordered the trial court to hold an evidentiary hearing with in 45 days and decide whether: (1) Mr. Nazarzai had the present ability to comply with the December 2012 turnover order, (2) a substantial likelihood existed that continued confinement would accomplish the purpose of the December 2012 turnover order, and (3) Mr. Nazarzai's continued conferment had not become punitive rather than coercive. (*Id.*) On October 28, 2016, the trial court held an evidentiary hearing as ordered by the California Court of Appeal. (*Id.*)

Finally, on November 4, 2016, the trial court released Mr. Nazarzai from custody. (*Id.*) Less than a year later, Mr. Nazarzai filed this lawsuit under 42 U.S.C. Section 1983 and 42 U.S.C. Section 2000cc-1, requesting monetary damages against Defendants the County of Orange, the Orange County Sherriff's Department ("OCSD"), former Sheriff Sandra Hutchens, and Deputy Ben Garcia. (Dkt. No. 1 at 11.)

The Court now turns to the applicable law. To bring a Section 1983 claim against a municipal entity for the actions of its employees or agents, *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) requires that a plaintiff show: (1) the constitutional violation at issue was the result of a governmental policy or a longstanding practice or custom; (2) the individual defendant who committed the constitutional violation was an official with final policy-making authority; or (3) an official with final policy-making authority ratified the unconstitutional act. *See Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citing *Monell*, 436 U.S. 658 (1978) and others).

To bring a Section 1983 claim against defendants in their individual capacities, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, government officials, whether subordinates or supervisors, may be held liable under Section 1983 only when their own actions have caused a constitutional deprivation. *OSU Student All. v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

Significantly, those executing a court order valid on its face are entitled to immunity. Cal. Gov. Code § 820.4.

To bring a claim under the Religious Land Use and Institutionalized Persons Act 42 U.S.C. Section 2000cc-1 ("RLUIPA") plaintiffs must show: (1) they take part in a "religious exercise" and (2) the State's actions have substantially burdened that exercise. *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015). If plaintiffs satisfy those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005).

Judges may order that a person be imprisoned for failure to honor a court order that the person is capable of honoring. Here, the suspicious circumstances surrounding the original failure to pay the $360,540 suggests that early on the money was available and that Mr. Nazarzai could have paid it. But this became increasingly uncertain with the passage of time and the development of facts. For example, the woman allegedly involved in the initial scam, Ms. Fasela, broke off her engagement to Mr. Nazarzai, and might have left with the money. Money available at the beginning likely was not available a few years later, and more likely not available six years later.

5

Generally, the justification for contempt imprisonment has sometimes been that the defendant "has the keys to the jail in hand", by simply providing the information ordered. Thus, a journalist may be jailed for not revealing a source obviously known by the journalist. The pending case is much different since it is not obvious that the defendant had and continues to have the money necessary to comply with the order. And the passage of time increases the uncertainty.

This might be why the California Court of Appeal sent the matter back to the trial court in 2016 for review. And it might be one reason why the trial court released Mr. Nazarzai in late 2016. It certainly is possible, even very likely, that the conditions justifying the release happened years earlier.

Further, in 2014, the trial court ruled that Mr. Nazarzai was sufficiently indigent to justify the appointment of a public defender. That is a very strong evidence that he was unable to pay $360,540 in 2014, but he lingered in jail for almost two more years.

Mr. Nazarzai's suicide attempt in 2014 is another strong sign that he was unable to pay the $360,540 by 2014. Someone attempting suicide is not retaining money to be enjoyed on release from imprisonment.

So the key issue is what remedies, if any, now exist for Mr. Nazarzai. At trial, defense counsel essentially argued that Mr. Nazarzai's long sentence may not seem fair or equitable but still be legally correct. Defense counsel is correct.

Mr. Nazarzai should have been released in 2014 and very likely earlier. But the possible defendants in this case were all government employees honoring in good faith the orders of

the judge acting with judicial immunity. As noted, those executing a court order valid on its face are entitled to immunity. Cal. Gov. Code § 820.4.

Mr. Nazarzai's real remedy was with higher courts that could have stopped the imprisonment ordered by the trial court. Eventually, the California Court of Appeal ordered the trial court to hold another evidentiary hearing, which in turn lead to Mr. Nazarzai's release.

But now, the facts and the law simply and sadly don't support an award of money damages against any Defendants. Plaintiff failed to prove at trial that any "policy statement, ordinance, regulation or decision officially adopted" by the County or OCSD was followed by Ms. Hutchens or Mr. Garcia in a manner that violated Mr. Nazarzai's constitutional rights. *See Monell*, 436 U.S. 658 at 694. The Court also concludes there is no liability for the individual defendants who followed orders that were valid on their face. *See* Cal. Gov. Code § 820.4; *Dang v. Oakland Police Dep't*, No. C 13–4155 PJH, 2014 WL 793613, at *8 (N.D. Cal. Feb. 26, 2014) ("officers who execute a court order valid on its face are entitled to immunity").

Further, Mr. Nazarzai failed to prove at trial that any regulation or procedure followed by the County or the OCSD imposed a "substantial burden" under RLUIPA on Mr. Nazarzai's exercise of his Islamic faith. *See Walker*, 789 F.3d 1125 at 1134. Numerous witnesses were called at trial on the issue of religious discrimination, and the Court found very credible the witnesses who diminished the claim of religious discrimination. Any challenges faced by Mr. Nazarzai exercising his religion in jail did not impose a substantial burden.

There are other troubling facts in awarding money damages. The facts establish that Mr. Nazarzai's creditors would immediately seek any payments in this case. Thus, it is likely that if this Court ordered a judgment against the County, the judgment would immediately be passed to the state for the payment of fines owed by Mr. Nazarzai to the state. That is not

relevant to the ultimate question of liability in this case, but like so much in this case, it is a troubling aspect difficult to overlook.

Likewise, it is difficult to overlook how the long imprisonment in this case creates something akin to a debtor's prison, long rejected in our modern society. And just as the failure to pay restitution when unable to do so must not be a factor in increasing a criminal sentence, so the failure to pay should not increase jail time when, as here, it becomes unclear whether there is an ability to pay. *See United States v. Burgum*, 633 F.3d 810, 814 (9th Cir. 2011) (affirming "the well settled principle that inability to pay restitution does not justify imposition of a longer term of imprisonment").

Still more troubling aspects arise in this case. There are a growing number of "alphabet-soup" government agencies that are ultimately given the option of seeking to throw someone in jail without the time-honored protections normally given to criminal defendants. These agencies include the SEC, FTC, and CFPB. In this case, the government can seek a civil order of payment following a financial crime and then seek to send the civil defendant to jail for failure to pay. After the dust settles, a civil defendant that committed a financial crime ends up in jail without the protections normally given to criminals. These protections include free counsel, the highest burden of proof, the right to a grand jury indictment, etc. We should not let such important cornerstones of our justice system be washed away in the murky soup of agency contempt proceedings. This is especially true here, where Defendants state that a crime that could have been charged based on Mr. Nazarzai's actions—theft by false pretenses—would be punished by a maximum of three years in jail, about half of the time of Mr. Nazarzai's sentence. (*See* Dkt. No. 107 at 6-8.)

Still, ultimately, the Court must find that Defendants are not liable to Plaintiff. The Court acknowledges that the trial court should not have imprisoned Mr. Nazarzai for as long as it did. And the Court suggests that the California legislature amend the language of California

Penal Code Section 19.2 to clarify the distinction between Section 19.2 and California Code of Civil Procedure Section 1219(a), and provide procedural safeguards to prevent circumstances like those present here from happening again.

Defendants are entitled to final judgment. The Court reaches this result after reviewing all arguments in the parties' papers, holding a trial, and holding oral closing arguments. Any arguments not specifically addressed were either unpersuasive or not necessary to reach considering the Court's holdings.

Defendants' counsel are directed to prepare its proposed judgment and file and serve it on Plaintiff within seven days of this document. <u>The proposed judgment must be as brief as possible</u>. Plaintiff shall have seven days from the date of service of the proposed judgment to file any objections to the proposed judgment. If no objections are received within seven days, the judgment will be entered immediately.

Dated: December 30, 2019

Hon. Andrew J. Guilford
United States District Judge